## TERMINATION OF POLICY OF BENEFICIAL INSURANCE.

[Circuit Court of Lucas County.]

BARBARA FOXHEVER v. THE ORDER OF THE RED CROSS ET AL.

Decided, October 26, 1901.

*Insurance—In a Beneficial Order—Cancellation of the Policy in an Informal Way—Acquiescence of the Insured Therein—Right to Change Beneficiary Makes Policy a Part of the Insured's Estate—Members of the Order Not Within Section 5242 Barring Testimony of Adverse Parties—But Widow Within That Class.*

1. Section 5242, providing that a party shall not be permitted to testify where the adverse party claims as heir, grantee, etc., renders incompetent the testimony of a widow who has sued a beneficial order upon a policy of insurance upon the life of her husband; but members of the order are not debarred by this statute from testifying as to matters occurring in the lodge room when the decedent was present.

2. Where the right exists in one insured in a beneficial order to change the beneficiary under his policy, such policy up to the time of his death constitutes a part of his estate. It follows therefore that admissions or declarations made by the insured and affecting the policy may be offered in evidence against the beneficiary in an action on the policy.

3. Failure by a beneficial order to observe the formalities perscribed by its constitution as to the suspension of members and cancellation of their policies, renders such action illegal; but a member who ceases after such action to pay his dues, or to attend the meetings of the order, or to recognize himself in any way as a member thereof, will be held as a matter of law to have acquiesced in the action taken.

4. In an action brought by the widow on a policy terminated in an irregular way, but in the cancellation of which the husband must be held to have acquiesced, it is not error to direct a verdict for the defendant order.

HAYNES, J.; PARKER, J., and HULL, J., concur.

A petition in error is filed here for the purpose of reversing the judgment of the court of common pleas in an action that was brought against the Order of the Red Cross et al by the plaintiff for a death loss.

George Foxhever, on September 3, 1888, had received from this order a certificate for the payment of $1,000 upon his death,

he directing that it should be paid to his wife. He continued to be a member of the order down to 1894, when some events occurred which, it is claimed, changed the conditions of affairs between him and the defendant, and by which he ceased to be a member of the order. Some eight or nine months after that he died, and subsequently his wife brought suit against this order for the recovery of this sum. Upon the trial of the case in the court of the common pleas, at the close of the testimony, the trial judge directed a verdict for the defendant company. In doing so he followed, as he states, the rulings of this court in the case of *Dimmer* v. *Catholic Knights*, 22 C. C., 366.

The testimony shows that Foxhever remained a member of the order until November, 1894. At that time it is claimed on behalf of the order that they had discovered that he had made a misrepresentation in regard to his age at the time he became a member of the order, he having stated at that time to be forty-nine years, when in fact, as the order claimed, he was fifty-nine years of age, the rules and regulations of the order prohibiting the taking of any person as a member of the order over fifty-one years of age. Upon the discovery of this fact, Mr. Foxhever being present at a meeting of the order (whether sent for or not does not clearly appear, but the testimony shows that he was present) his attention was called to it, and apparently for the purpose of taking some steps against him leading to his expulsion. It was stated to him that they desired to inquire into it, and he replied, according to the testimony of sundry witnesses, varying some in form or phraseology, but agreeing substantially in the main points, that he was "no chicken," and that they "might go to hell." They all agree on the last clause. That seemed to impress them very forcibly. And he turned and walked out of the room and never appeared there again.

Thereupon a resolution was offered and seconded and carried, and evidence was taken, upon which the order unanimously resolved to expel him for the reason that he had misled them and misrepresented his age at the time he became a member of the order. They directed the scribe, I think they call him, to notify Foxhever of the resolution that they had passed after he had left the room, and he accordingly addressed to him a postal card notice to his house.

Foxhever lived eight months after that, but paid no attention to the order. They sent him no notices, and he paid no dues, and made no inquiry; in fact he was utterly silent from that time forth until the time of his death. After his death, as I have said, the widow brought this suit.

By the terms of the constitution of the order the assured had the right to name the beneficiary under his certificate or policy, and he might change it from time to time as he saw fit. It remained under his control until he ceased to be a member, or until his death. Foxhever never made any change. The original order was payable to his wife, and he never made any change in regard to it.

Some of the questions that have been argued here are important and interesting, and we have discussed them at considerable length in our consultation room.

The first is as to the admission of testimony of members of the order who were present at the meeting of November 16 in regard to what transpired there and what was said. It is claimed that inasmuch at these members were liable to pay at each death a certain amount of money to make up the sum that was payable to the beneficiary, they were interested parties to the question; that as members of the corporation they were interested to the extent of their liability, at least to pay the amount of $1,000 to this plaintiff. It is claimed that while they are not parties to the action, at the same time they come within that provision of the statute that provides that an interested party shall not testify, and that the spirit of the statute should be applied wherever the facts of the case require it. The plaintiff is Barbara Foxhever, and some question was made whether she comes within the clause of the statute (Section 5242, Revised Statutes) that provides that the defendant shall not be permitted to testify where the opposite party claims by or through a deceased person. We are of the opinion that she does come within that classification, because she takes under this certificate by the appointment of the husband, by his authority and by his right as a member of the order, and that it may, therefore, properly be said that she claims by or through her husband.

So far as the right of these other persons to testify is concerned, the question is interesting, and is one that has never been passed upon by the Supreme Court of the state. Indeed it is not very often raised. The only time we have had any question like it come up was when objection was made to the officers of a corporation testifying in regard to a contract that had been entered into with a deceased person, the suit being brought by the administrator, and in that case we refused to allow the officers of the corporation to testify, holding, in effect, that they were the real parties in interest, the persons who had made the contract and were interested; that they were members of a corporation doing business, of course, under a name that the statute permitted them to assume, and under which they could be sued and could sue by; but inasmuch as they were the persons who had made the contract, that they ought not to testify, the lips of the other party being silenced by death. That is as far as we have gone, and that is as far, as at present advised, we think we ought to go. We are of the opinion that the interest these parties had in this matter ought not to prevent the members of that body from testifying as to matters that occurred within the lodge room at the time that the deceased was present and with the deceased.

This society was made up of persons who gave very little attention, apparently, to the orderly conduct of their business. Perhaps they are engaged in vocations and duties that led them to be loose in methods of business. There are rules adopted by the body which govern it, and these rules provide for the manner in which a person may be expelled for violation of rules of order, or for a misstatement of his age in becoming a member of the order:

"Section 86.   *   *   *   Members who shall be found guilty of knowingly obtaining membership in this order through fraud, such as concealing age, or any bodily or mental infirmity which would debar them if known, or of falsely answering questions on their medical examination, shall upon conviction thereof be suspended from the order and shall not be reinstated or again received as members. Any member charged as above shall be entitled to a fair and impartial trial.

"Section 89.    Any member shall be entitled to a fair trial for any offense involving fine, reprimand or suspension (except for non-payment of dues, death assessment, and for gross offenses committed in open commandery).    No member shall be put upon trial unless charges, duly specifying the offense, so as to fully apprise them of the nature thereof, and enable them to prepare for defense, shall be submitted to the commandery in writing, signed by a member of the order.    Such charges shall be referred to a trial committee of three members.    And in case such committee or any member of it shall be challenged for cause, such challenge shall be tried by commandery, and if the challenge is sustained another member shall be appointed to act in his place," etc.

They are to keep minutes, report to the commander, and the commandery are to decide upon the charges.    The same section provides:

"If the accused refuse or neglect to stand trial when personally summoned, the committee shall report him or her guilty of contempt of the commandery, which report shall be conclusive as to guilt, and the penalty shall be at once fixed by the commandery, which shall take effect at the expiration of two weeks, unless an excuse is tendered for such absence which shall be satisfactory to the commandery."

It will be observed, as I have stated, that this proceeding was not gone through with.    The trial court held that the proper proceedings had not been taken to expel him, but that under the decision in *Dimmer* v. *Catholic Knights of America*, 22 C. C., 306, the question would properly arise as to whether or not, under the law of the land and upon the facts of the case, he had not acquiesced in his expulsion, although it was not properly made, and whether or no he did not cease to be a member of the order.

There is another question that arises in the case.    It will be observed that the lodge did act upon the statement made by the accused at the time that he was spoken to by the commander at this meeting on November 24.    They took it practically as a confession, an admission that he did misstate his age at the time of obtaining his certificate.    The question arises as to whether, if that were true, if he did admit that fact, that that could or should affect the rights of his wife—whether, in short,

his admissions in her absence could cut off her rights. Cases were cited (and I suppose there can be no question as to the law) where a policy of insurance is issued in the ordinary form, even although it be made with the wife as beneficiary, for the wife to be paid a certain sum upon the death of her husband, that she has a right in that policy which can not be cut off by the admissions of the husband; but it is claimed that this class of policies stand on an entirely different ground; that by the terms, as I have stated, of the constitution, the husband in this case has a right to change the beneficiary and name some other person at any time he sees fit to do so, and his right to do so has been recognized by the Supreme Court of Ohio, although he must do it in pursuance of the constitution and by-laws of the order. There are a variety of decisions in the United States upon this question. We are cited by counsel to Niblack Benefit Societies, Section 377, and to Beache Benevolent Societies, Section 460. In Niblack there are some reference to cases, one in Indiana, in which it was held that the admissions of the husband could not be received to cut off the wife's rights, and in another state (Illinois) it was held that they could be; the line of argument in Indiana being that while the husband had the right, he had not exercised it during his lifetime, and, therefore, the right remained in the wife, and so long as he had failed to exercise and change it, that any admission that he might have made affecting the policy could not cut off her right. In Illinois the court held that so long as he had the right, as he did, to at any time change the name of the beneficiary under the policy, that the policy remained as his—part of his estate, his property, his to do with as he chose, —and for that reason any admissions, or declarations, or statements he might make affecting that policy during the time that he so held it (of course, being during his lifetime) might be offered in evidence as against the beneficiary under the policy. We are inclined to think, and we will so hold in this case, that the latter view is the correct one, and that the declarations made by Foxhever during his lifetime might be received in evidence for the purpose of affecting the validity of the policy.

Such being the condition and position of affairs, did the court err in directing a verdict by the jury for the defendants? As I have stated, this declaration was made, which I will not repeat, in the presence of the lodge. From that time forth he never recognized the lodge in any manner or form, by any payment of dues, or anything else. It seems to us that that act was a clear and well defined admission that the charge that was made against him by the commander at that time was true; that he had made a false statement at the time that he became a member; and then he used very abusive language towards the lodge and the person charging him with the offense. It seems to us that that is a very full and complete confession of the charge which was made against him. He ceased from that time forth, as I have said, to make any demand of the lodge, to go near the lodge, to ask for any explanation about any dues, or to in any manner or form recognize himself as a member of the lodge, up to the time of his death. And we think under the rules that were laid down by this court in *Dimmer* v. *Catholic Knights, supra,* which were, as we think, sustained by authority, in which case a very full opinion was delivered by Judge Hull, with a citation of the authorities, that the court was authorized, upon the admitted facts of the case, to direct a verdict in favor of the defendants.

We have therefore concluded, upon a careful investigation of the case, that the judgment of the court of common pleas ought to be affirmed, and it is so ordered.

*O. S. Brumback* and *C. A. Thatcher,* for plaintiff in error.
*Kohn & Northrup,* for defendants in error.